## RECORD NOS. 08-2243

**IN THE**

# United States Court of Appeals

### FOR THE FOURTH CIRCUIT
_____

## BUCHANAN COUNTY, VIRGINIA,

*Plaintiff-Appellant,*

v.

## KENNETH JOSEPH STEPHENS;
## VANSANT LUMBER COMPANY;
## KJ STEPHENS AND ASSOCIATES, LLC,

*Defendants-Appellees,*

and

## STUART RAY BLANKENSHIP,

*Defendant.*

_____

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF VIRGINIA
### (HONORABLE JAMES P. JONES PRESIDING)
_____

## RESPONSE BRIEF OF APPELLEES
_____

Timothy W. McAfee, VSB # 21779
TIMOTHY W. McAFEE, PLLC
Post Office Box 529
Norton, Virginia 24273-0529
(276) 679-5401
tmcafee@mcafeelaw.com

*Counsel for Appellees*

## DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney. Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case. Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements. Counsel has a continuing duty to update this information.

No. 08-2243       Caption: _____ Buchanan County v. Kenneth Stephens, et al _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

___Kenneth Stephens, et al___ who is _____ Appellee _____,
(name of party/amicus)            (appellant/appellee/amicus)

makes the following disclosure:

1.  Is party/amicus a publicly held corporation or other publicly held entity?
    ☐ YES              ☑ NO

2.  Does party/amicus have any parent corporations?
    ☐ YES              ☑ NO
    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?
    ☐ YES                        ☑ NO
    If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?
    ☐ YES              ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)
    ☐ YES              ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?
    ☐ YES              ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:


_____11/24/2008_____          Tim McAfee
(signature)                        (date)

TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................... iii

STATEMENT OF THE CASE................................................................ 1

    Prior Proceedings: ....................................................................... 1

STATEMENT OF FACTS .................................................................. 12

STATEMENT OF THE ISSUES ............................................................ 19

SUMMARY OF THE ARGUMENT ...................................................... 20

STANDARD OF REVIEW ................................................................. 22

ARGUMENT ................................................................................. 24

I.     THE TRIAL COURT CORRECTLY FOUND THAT BUCHANAN

         COUNTY FAILED TO PROVE ITS RESCISSION CLAIM........... 24

    A  ABSENCE OF PROFIT EVIDENCE............................................. 24

    B.  ABSENCE OF ANY CONTRACT WITH VLC ............................ 30

    C.  ABSENCE OF PROPER NOTICE OF RESCISSION TO VLC ...... 31

    D.  PRECLUSION OF THE STATUTORY EQUITABLE REMEDY.... 33

II.    VLC AND KJS ARE ENTITLED TO SET OFF............................. 38

CONCLUSION ............................................................................... 39

REQUEST FOR ORAL ARGUMENT .................................................... 40

CERTIFICATE OF COMPLIANCE UNDER FRAP 32............................ 41

i

CERTIFICATE OF SERVICE AND FILING ........................................... 42

TABLE OF AUTHORITIES

**Cases**

*Alleghany County v. Parrish*, 93 Va. 615, 25 S.E. 882, 884 (Va. 1896)....... 34

*American-LaFrance & Foamite Industries v. Arlington County,* 169 Va. 1, 192 S.E. 758 (1937) ............................................................................ 36

*Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306, 105 S.Ct. 2622, 86 L.Ed.2d 215 (1985 ................................................................ 36

*Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251 (1946) ....................... 31

*Bolling v. King Coal Theaters*, 185, Va. 991, 41 S.E.2d 59 (1947)......... 9, 35

*Brady v. Southern Railway Co.*, 320 U.S. 476, 480, 64 S.Ct. 232, 234, 88 L. Ed. 239 (1943) .................................................................................... 25

*Buchanan County Virginia v. Blankenship,* 496 F. Supp. 2d 715 (W.D. Va. 2007). ................................................................................................... 2

*Eastman Kodak Co. v. Southern Photo Materials Co.,* 273 U.S. 359 (1927) ............................................................................................................... 31

*Ford Motor Co. v. McDavid,* 259 F.2d 261 (4th Cir. 1958)....................... 24

*Galloway v. United States*, 319 U.S. 372, 395, 63 S.Ct. 1077, 1089, 87 L.Ed. 1458 (1942) ........................................................................................... 25

*General Accident, Fire & Life Assur. Corp. v. Murray*, 120 Va. 115, 90 S.E.

620 (1916) ................................................................ 7, 31

*Gibson v. Old Town Trolley Tours of Washington, D.C., Inc.,* 160 F.3d 177,

181 (4th Cir.1998)................................................................ 24

*In re Wildewood Litigation,* 52 F.3d 499, 502 (4th Cir.1995) .................... 24

*Isbell v. Commercial Inv. Associates, Inc.,* 273 Va. 605, 644 S.E.2d 72 (2007)

................................................................................ 34

*Jan Paul Fruiterman, M.D. and Associates, P.C. v. Waziri*, 259 Va. 540, 525

S.E.2d 552 (2000) ................................................................ 34

*Lindsey v. Clark* , 193 Va. 522, 69 S.E.2d 342 (1952) .............................. 39

*Pinter v. Dahl*, 486 U.S. 622, 632, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988)

................................................................................ 36

*Price v. City of Charlotte,* 93 F.3d 1241, 1250 (4th Cir.1996) ................... 24

*Singer v. Dungan,* 45 F.3d 823, 826 (4th Cir.1995) .................................. 24

*Turner v. Virginia Fireworks Co.,* 149 Va. 371, 141 S.E. 142 (1928)...... 8, 31

*Westbrook v. Westbrook*, 5 Va. App. 446, 364 S.E.2d 523 (1988) .............. 35

*White v. County of Newberry,* 985 F.2d 168, 173 (4th Cir.1993) ............... 24

*Virginia Public Service Co. v. Steindler*,166 Va. 686, 187 S.E. 353 (1936) . 35

**Statutes**

Virginia Code §13.1-637 ........................................................... 34

Virginia Code §2.2-3123 .............................................. passim

IN THE

UNITED STATES COUR OF APPEALS

FOR THE FOURTH CIRCUIT

BUCHANAN COUNTY VIRGINIA                APPELLANT

v.          **Record No. 08-2243**

VANSANT LUMBER COMPANY ET AL          APPELLEES

OPENING BRIEF OF VANSANT LUMBER COMPANY &

KJ STEPHENS AND ASSOCIATES, LLC

APPELLEES

Now come the Appellees, Vansant Lumber Company and KJ Stephens and Associates, LLC, and submit this Opening Brief in accordance with FRAP 28 and FRAP 32.

STATEMENT OF THE CASE

*Prior Proceedings:*

Buchanan County Virginia filed a civil action against Vansant Lumber Company [VLC] and KJ Stephens and Associates, LLC [KJS] and others, including Kenneth Joe Stephens, individually, seeking money damages. The Complaint included claims pursuant to the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. 1961 et seq., and pursuant to Virginia

1

Code §2.2-3123. [J.A. @ 46-61. Doc # 1: Complaint by Buchanan County]. With respect to the RICO claim, Buchanan County was the corrupt organization under the RICO statutory scheme that serves as the basis for its claim.

Kenneth Joe Stephens was a civil defendant only with respect to the RICO claims. Buchanan County alleged that he acted as the agent for VLC and KJS.

Buchanan County alleged that it had been economically injured by VLC and KJS, Stephens and others, as a result of bribes being paid to Buchanan County officials in order to secure government contracts for debris removal following a devastating flood in May of 2002. By the time that the civil trial began, Stephens and many Buchanan County officials had been indicted and had been found guilty of RICO violations. Stephens plead guilty. VLC and KJS were not criminal defendants.

The District Court summarized the illegal conduct that forms the basis of Buchanan County's claims. *See Buchanan County Virginia v. Blankenship,* 496 F. Supp. 2d 715 (W.D. Va. 2007). Although that opinion is not the evidence that was introduced in the jury trial, it is helpful background reading to understand the claims of Buchanan County.

2

VLC, KJS and Stephens denied that they owed any moneys to Buchanan County, and they asserted that Buchanan County could not sustain their claims because (1) Buchanan County acted *in pari delicto*, (2) Buchanan County had not sustained an economic injury, (3) Buchanan County had not provided appropriate Notice of the rescission of any contracts to VLC and (4) the statute of limitations barred the claims by Buchanan County . [J.A. @ 75-83; 172-173. Doc # 116: Answer of VLC; Doc # 130 Answer of KJS; Doc #182 Amended Answer; Doc # 444 Amended Answer by VLC, KJS and Stephens]. A jury trial was held on all of these claims by Buchanan County against VLC, KJS, Stephens and others in June 2008.

Buchanan County sought to introduce the transcript of the prior testimony of Stephens in a related criminal trial against one of the criminal RICO Defendants, Lester. [Doc # 438: Plaintiff's Third Motion *in Limine*]. VLC and KJS objected to the transcript. [J.A. @ 175-179. Doc # 450]. The District Court allowed its introduction only as evidence against Stephens, and not as evidence against VLC and KJS. [J.A. @ 180-182. Doc # 460: Order]. To the extent that Buchanan County now relies upon portions of this transcript as evidence against VLC and KJS, it was not admitted against

3

them and should be entirely excluded from this Court's consideration. The ruling by the District Court on the limited use of this evidence was not objected to by Buchanan County, and therefore Buchanan County may not attempt to use this as evidence to bolster its position on appeal.

At the conclusion of the Plaintiff's evidence, Stephens, VLC and KJS moved for a directed verdict. The District Court took that Motion under advisement. [J.A. @ 380. Trial Transcript: June 5, 2008 @ p. 78]. At the conclusion of all of the evidence, VLC and KJS renewed this motion. The District Court took that Motion under advisement. [J.A. @ 383 . Trial Transcript: June 5, 2008 @ p. 115]. The District Court submitted the claims to the jury.

The jury was first asked to consider a series of Special Interrogatories that related only to the RICO claims by Buchanan County.  The District Court charged the jury that "in response to Buchanan County's allegations…defendants argue that Buchanan County should not prevail because Buchanan County was an active participant in any conspiracy that existed…each defendant must prove by a preponderance of the evidence the following three elements: First, agent or employees of Buchanan County knowingly participated in the conspiracy charged; second the participation

of the agents or employees in the conspiracy was active and third, Buchanan County, through its agents or employees, bears at least equal responsibility for the conspiracy. [J.A. @ 386-387. Trial Transcript: June 5, 2008 153:22-25; 154:4-11). The Court directed the jury to consider "my prior instructions as to the active co-participant defense…[namely] "whether agents or employees of Buchanan County knowingly participated in the exact same acts of racketeering as the defendant asserting the defense; second the participation of the agents or employees was active; and third Buchanan County through its agents or employees bears at least equal responsibility for the acts of racketeering as the defendant asserting the defense." [J.A. @ 384. Trial Transcript: June 5, 2008 151:11-18). The Court went on to explain that "you may find it helpful to consider the extent of the county's participation in these acts of racketeering, the number of county employees involved in the acts of racketeering, whether the county initiated the acts of racketeering, and the level of responsibility or authority exercised by the county employees who participated in the acts of racketeering." [J.A. @ 385. Trial Transcript: June 5, 2008 152:10-16). The Jury was advised Buchanan County could not prevail if Buchanan County was an active participant in the acts of racketeering. [J.A. @ 384; 387. Trial Transcript: June 5, 2008

151:2-4; 154:12-14)

The jury returned its verdicts and found the following facts: (1) Stephens was acting as an agent for VLC and KJS. (2) Stephens' payment of bribes did not injure Buchanan County's business or property. (3) Stephens conspired to violate RICO. (4) The conspiracy did not injure Buchanan County's business or property.  (5) Buchanan County was an active co-participant in the unlawful conduct. (6) Buchanan County did not suffer "**any injury or damages as a result of the conspiracy**". [J.A. @ 388-396 . Trial Transcript: June 6, 2008 3-10] [*emphasis added*]

The jury was finally asked a series of Special Interrogatories that related to the state law rescission claim. The District Court charged the jury that they must determine what amount of money the county paid for the contracts in question, the reasonable value of the services rendered by the defendants to the county under the contracts, excluding any profit or commission to the defendants. The District Court instructed the Jury that the "defendants have the burden of proving by a preponderance of the evidence the reasonable value of the services rendered." [J.A. @ 402. Trial Transcript: June 6, 2008 17:1-12]. The District Court did not instruct the Jury that VLC and KJS had the burden of proving the amount of profit made. Buchanan

County did not object to this instruction or the verdict form. The Jury returned a verdict and found that KJS had received money greater than the reasonable value of goods and services rendered with no increment for profit and commission at least equal to what the county paid on the contracts, and found that difference in the amount of money paid by the county and the value of the services received was $250,000. The exact same verdict was returned as to VLC. [J.A. @ 409-410 . Trial Transcript: June 6, 2008 31:13-25; 32:1-4]

VLC and KJS filed a Motion for Judgment as a Matter of Law pursuant to FRCP 50 [J.A. @ 575-578. Doc # 491] and a Motion for Set Off [J.A. @ 579-581. Doc # 492]. VLC and KJS claimed that the verdicts on the Rescission Claim must be set aside on several grounds:

A.     The jury would have been required to guess or speculate as to the amount of any damages owed Buchanan County on this claim. Guesswork and speculation are not sufficient to award damages. No judgment for damages suffered can ever be based upon guesswork. *See General Accident, Fire & Life Assur. Corp. v. Murray*, 120 Va. 115, 90 S.E. 620 (1916); *Turner v. Virginia Fireworks Co.,* 149 Va. 371, 141 S.E. 142 (1928).

7

B.    Buchanan County failed to give proper notice to Vansant Lumber Company of its intent to seek rescission of any contract. The Notice was delivered to Kenneth Joe Stephens in 2005, and at that time, the undisputed evidence establishes that he was no longer an officer or director of the corporation. [J.A. @ 209 . Trial Transcript: June 3, 2008 30:24-25; 31:1-2].There was no evidence presented as to what position he held, if any, in 2005 with Vansant Lumber Company. The Virginia State Corporation Commission identifies Melba Stephens as the Registered Agent of VLC since 1990. No evidence was introduced that Melba Stephens received any Notice of Rescission as required by the statutory scheme. Further, the Notice of Rescission fails to identify what contracts for services that Buchanan County was rescinding with Vansant Lumber Company.

C.    Vansant Lumber Company had no contracts with Buchanan County as referenced in the Notice of Rescission [J.A. @ 232; 320; 444-445. Trial Transcript: June 3, 2008 @ pp. 54:10-16 & June 4, 2008 @ p. 15:1-2: Plaintiff's Exhibit # 3], therefore

8

rescission was not an available remedy.

D.  Rescission is an equitable remedy in Virginia, and any party invoking the aid of equity to rescind a contract must establish that their conduct was honorable and fair. *Bolling v. King Coal Theatres*, 185 Va. 991, 41 S.E.2d 59 (1947). The jury has found as a matter of fact that Buchanan County was an active participant in misconduct. Equity cannot and does not reward the wrongdoer nor does it allow unjust enrichment. The undisputed facts are that Buchanan County received services at a greatly reduced rate, and it was compensated in the amount of $5,900,000 via FEMA [Joint Exhibit #1], and was an equal wrongdoer. Accordingly, rescission is not a remedy available to Buchanan County.

E.  The statutory basis for Buchanan County's rescission claim is based upon the allegation that certain contracts for goods and services were awarded in violation of §2.2-3103. The only evidence introduced on this issue related solely to the debris removal contracts of July 2002. These contracts were with KJS and totaled approximately $452,000. Buchanan County paid

9

these amounts. There were no extensions or amendments of these contracts. The undisputed testimony was that the reasonable value of these services was $98.50 per ton of debris removed. There are no reasonable inferences from the undisputed evidence that would cause a reasonable person to conclude that Buchanan County is entitled to $500,000 based upon a theory of rescission.

With respect to the Motion for Set Off, VLC and KJS asserted that Buchanan County was not entitled to any additional funds from either VLC or KJS because VLC and KJS had already been disgorged of any possible profits via the criminal prosecution. Prior to the jury trial, VLC and KJS requested permission to introduce evidence that the Stephens had been required to disgorge $700,000 in possible profits that was paid to Buchanan County . The District Court denied the request and indicated that the issue of the $700,000 would be taken up post trial in the event that Buchanan County was entitled to an award of money. It is undisputed that approximately $700,000 was paid by Joe Stephens as disgorged profits pursuant to the criminal RICO prosecution. This amount was arrived at through negotiation with the Government and Stephens. The basis of the negotiations was to

10

arrive at an amount that represented the total amount of profits that could arguably be said to have received by VLC or KJS, collectively, in consequence of any bribes. Stephens, VLC and KJS have been disgorged of all profits from the bid rigging and bribery, and that money has been paid to Buchanan County. Buchanan County admits that it has received this amount from the Government. Following Stephens' forfeiture of the $700,000, Buchanan County petitioned the Government for Remission of the Funds. The Petition was granted and Buchanan County received all of the $700,000 paid by Stephens. In reply, Buchanan County alleges that the collateral source rule applies and should not reduce the amount of the verdicts against VLC and KJS.

The District Court agreed with VLC and KJS that the verdicts required speculation and guesswork, and accordingly granted the Motion by VLC and KJS on this basis. The District Court did not address the other grounds raised by VLC and KJS in support of their Motion, and the District Court did not address the issue of set off, finding the issue moot. [J.A. @ 584-588. Opinion & Order: Doc # 517 & 518].

Buchanan County noted its appeal in a timely fashion to the Final Order.

11

## STATEMENT OF FACTS

Stephens began to work within his family owned business of Vansant Lumber Company in 1992. In May of 2002, Stephens was a minority stockholder. In 2002, he was not an officer of the corporation. He served as the general manager of Vansant Lumber Company [J.A. @ 191. June 3, 2008, 13:2-4)

In May of 2002, there was a major flood that substantially impacted the Hurley community in Buchanan County. Initially Stephens went to the area affected by the flood looking for an employee. Stephens "saw the amount of devastation" and began assisting with cleanup efforts without any request for payment [J.A. @ 205; 215. Trial Transcript: June 3, 2008 27:2-3; 37-3-4]. Two or three days after the flood, the chairman of the board of supervisors for Buchanan County, Ray Blankenship, approached Stephens and advised Stephens that there was a lot of federal money coming to the area due to the flood and that he would like to see Stephens get some of the work. [J.A. @ 190. Trial Transcript: June 3, 2008 12:12-20)  Blankenship indicated that in order to insure Stephens' selection for the work, Stephens needed to write off an account Blankenship owed to VLC in the amount of $1,400.  [J.A. @ 190. Trial Transcript: June 3, 2008 12:21-22).  Stephens

12

complied.

In August, 2002, Stephens created K.J. Stephens and Associates, LLC for the specific purpose of participating in debris removal work associated with the flood and participating in the bidding of contracts. [J.A. @ 218 . Trial Transcript: June 3, 2008 40:21-25].Stephens began a series of bribes to ensure that KJS obtained the debris removal contracts for Sites 3 and 4. *See* Defendants Exhibit 1. [J.A. @ 212; 548 . Trial Transcript: June 3, 2008 @ p. 34]. Stephens described the activity as extortion by Buchanan County. "[A] lot of extortion that took place, as well as the bribes, … was to grease the chutes so they would keep you working. If you didn't pay the mob, so to speak, you didn't work…It's like everybody came with their hand out. Beats anything you've ever seen…Everybody wanted something." [J.A. @ 193-195. Trial Transcript: June 3, 2008 15-25; 16-1-2; 16:23-25; 17-8-9)

The following facts are either established by the jury's verdicts or they are undisputed testimony:

1.    Stephens was the agent of Vansant Lumber Company and K. J. Stephens and Associates, LLC in reference to allegation of the bid rigging and bribery that occurred following the Hurley Flood of 2002. [J.A. @ 570. Jury Verdict].

13

2.    Stephens was indicted for a violation of RICO and money laundering, to which he plead guilty. Throughout the criminal process, Buchanan County made no claim for victim restitution. [J.A. @ 252-253. Trial Transcript: June 3, 2008 @ pp. 74-75].

3.    Buchanan County paid VLC approximately $340,000 for work done in May and June 2002, for rental on equipment and removal of 5,000 tons of debris. [J.A. @ 367; 449. Trial Transcript: June 5, 2008 30:23-25; 31: 1-17; Plaintiff's Exhibit #15].

4.    VLC removed the 5,000 tons of debris without the benefit of any contract.

5.    Buchanan County had no written contracts with VLC [J.A. @ 320; 232. Trial Transcript: June 4, 2008 @ p. 15: Caudill Testimony; Trial Transcript: June 3, 2008 @ p. 54: Stephens Testimony].

6.    The requirement for competitive bidding was suspended by operation of law because it was declared a disaster during the time period that VLC did work for Buchanan County.  [J.A. @ 264. Trial Transcript: June 3, 2008 @ pp. 86-87; & J.A. @ 371. Trial Transcript: June 5, 2008 @ p. 41: Caudill].

7.    There was no evidence introduced by Buchanan County that showed

14

the relationship of Stephens to VLC in August 2005.

8.   There were only two contracts between Buchanan County and KJS for debris removal. [J.A. @ 554. Defendants Exhibits 5 and 6]

9.   The contracts with KJS related to debris removal from Site #3 and from Site #4, and both were obtained as a result of bid rigging and bribery. [J.A. @ 230. Trial Transcript: June 3, 2008 @ p. 52]

10.  Buchanan County rescinded the contracts obtained *via* the bid rigging and bribery, and delivered a written notice to Kenneth Joe Stephens in August 2005. [J.A. @ 208-209. Trial Transcript: June 3, 2008 @ p. 30:24-25; 31:1-2].

11.  Buchanan County paid KJS approximately $1.9 million for debris removal and for the construction of one bridge. [J.A. @ 321. Trial Transcript: June 4, 2008 @ p. 16:20-22].

12.  There was approximately 27,000 tons of debris removed by KJS. The contracts for debris removal that KJS obtained with Buchanan County required compensation at $60.25 per ton. [J.A. @ 331 . Trial Transcript: June 4, 2008 @ p. 26:15-16].

13.  The $60.25 per ton rate was far below a reasonable value for this service. [J.A. @ 278-279. Trial Transcript: June 3, 2008 @ pp. 120-

15

121: Terry Clevinger;  J.A. @ 381-382. Trial Transcript: June 5, 2008

@ pp. 94:10-12; 95:5-14 Don Kneppler; J.A. @ 565. Defendants'

Exhibit 16]

14.    Prior to Buchanan County engaging in bribery, the Army Corps of

Engineers was performing debris removal for $98.50 per ton.

15.    The reasonable value for debris removal was $98.50 per ton.

16.    Buchanan County, through its County Administrator, W.J. Caudill,

conceded that $98.50 per ton was a reasonable value for debris

removal. [J.A. @ 364-367].

18.    Stephens paid approximately $190,000 in bribes. The details of these

bribes are contained on Defendant's Exhibit # 1 . [J.A. @ 548.

Defendants' Exhibit 1]

19.    The testimony of Stephens in the Lester Trial [J.A. @ 421-443.

Plaintiff's Exhibit #2] was not admissible against VLC and KJS. The

only evidence as to the amount of bribes paid by Stephens as agent for

either K. J. Stephens and Associates, LLC or Vansant Lumber

Company is $190,000.

20.    Buchanan County was an active participant in the bid rigging and

bribery. [J.A. @ 566-571. Jury Verdict].

16

21.  Buchanan County, through its agents or employees knowingly participated in the conspiracy to violate RICO. [J.A. @ 566-571. Jury Verdict].

22.  Buchanan County's participation through its agents or employees in the conspiracy was active. [J.A. @ 566-571. Jury Verdict].

23.  Buchanan County, through its agents or employees, is at least equally responsible for the conspiracy. [J.A. @ 566-571. Jury Verdict].

24.  The basis for the jury's conclusion that Buchanan County was an active participant in the bid rigging include the following: (A) the extent of the Buchanan County's participation in the acts of racketeering, (B) the number of county employees involved in the acts of racketeering, (C) whether the county initiated the acts of racketeering, and (D) the level of responsibility or authority exercised by the county employees who participated in the acts of racketeering. [J.A. @ 385; 566-571. Jury Verdict].

25.  Buchanan County did not sustain any injury from the bid rigging or bribery. [J.A. @ 566-571. Jury Verdict].

26.  Buchanan County offered no testimony or evidence as to the amount of profit made by VLC for the work it did in order to be compensated

17

$340,000 by Buchanan County.

27.     There was no testimony or evidence from any Defendant as to the amount of profit made by VLC for the work it did in order to be compensated $340,000 by Buchanan County.

28.     Buchanan County offered no testimony or evidence as to the amount of profit made by KJS for the work it did in order to be compensated $1.9 million by Buchanan County.

29.     There was no testimony or evidence from any Defendant as to the amount of profit made by KJS for the work it did in order to be compensated $1.9 million by Buchanan County.

30.     Buchanan County introduced no evidence that the Registered Agent for VLC was served with the Notice of Rescission as required by the statutory scheme for rescission of contracts.

31.     Buchanan County introduced no evidence of the position that Stephens occupied in August 2005 with VLC when Buchanan County served with the Notice of Rescission as required by the statutory scheme for rescission of contracts.

18

## STATEMENT OF THE ISSUES

1.  Did the District Court properly vacate the jury verdict in favor of Buchanan County based on an insufficiency of evidence to support a jury award in favor of Buchanan County against VLC and KJS on the Rescission Claim?

2.  Is the failure to introduce evidence of profit by either VLC and KJS fatal to Buchanan County's claim for rescission?

3.  Did Buchanan County prove the existence of any contract with VLC that was obtained as part of the bid rigging scheme?

4.  Did Buchanan County give proper notice to Vansant Lumber Company of its intent to seek rescission of any contract?

5.  Is Buchanan County entitled to pursue the equitable rescission claim authorized by the statute in light of the jury's verdict that Buchanan County acted *in pari delicto*?

6.  Assuming arguendo that this Court finds that Buchanan County is entitled to the jury award, is VLC and KJS entitled to have that award reduced by the amount of money paid by Stephens as required by his criminal sentence to disgorge him and his companies of all profits?

19

## SUMMARY OF THE ARGUMENT

The District Court properly granted judgment as a matter of law pursuant to FRCP 50 (b). There was no legally permissible evidentiary basis for the jury's verdict.

The jury could only speculate as to what amount of money that Buchanan County would be entitled to based upon a claim of rescission under §2.2-3106 through 2.2-3109.

Buchanan County failed to prove the existence of any contracts with VLC that were obtained as part of the bid rigging scheme.

With respect to Buchanan County's claim against VLC, Buchanan County did not give proper notice to VLC of its intent to seek rescission of any alleged contract. The Notice fails to identify what contracts Buchanan County seeks to rescind. The Notice was not served upon any person who is authorized to accept service of the Notice.

Buchanan County failed to prove that either VLC or KJS had any profit from the alleged bid rigging and bribery scheme.

Buchanan County is not entitled to pursue the equitable rescission claim authorized by the statute in light of the jury's verdict that Buchanan County acted *in pari delicto*.

Assuming *arguendo* that this Court finds that Buchanan County is entitled to the jury award, Buchanan County has already been compensated for alleged profits made by Stephens, VLC and KJS.   The actions by Buchanan County to recoup profits "again" from Stephens, VLC and KJS are tantamount to extortion. Buchanan County petitioned and received $700,000. This money was paid by Stephens to the United States Government and represents disgorged profits made by VLC and KJS.

STANDARD OF REVIEW

This Court reviews the grant or denial of FRCP 50 Motion *de novo*, with the evidence viewed in the light most favorable to the nonmoving party. *In re Wildewood Litigation,* 52 F.3d 499, 502 (4th Cir.1995). Judgment as a matter of law is proper "when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment." *Singer v. Dungan,* 45 F.3d 823, 826 (4th Cir.1995). If "there is no legally sufficient evidentiary basis" for a jury's verdict, a motion for judgment as a matter of law must be granted." *Price v. City of Charlotte,* 93 F.3d 1241, 1250 (4th Cir.1996).

Although the District Court and this Court may draw reasonable inferences on behalf of Buchanan County, it may not indulge in speculation. *Gibson v. Old Town Trolley Tours of Washington, D.C., Inc.,* 160 F.3d 177, 181 (4th Cir.1998).

A FRCP 50 Motion should be granted if the plaintiff has not produced substantial evidence to support his claim. *White v. County of Newberry,* 985 F.2d 168, 173 (4th Cir.1993).

In *Ford Motor Co. v. McDavid,* 259 F.2d 261 (4th Cir. 1958), Judge Haynsworth found the Plaintiff's evidence insufficient on the issue of

causation in a manufacturer's negligence case. After conceding that "it is the province of the jury to resolve conflicting inferences from circumstantial evidence … (p)ermissible inferences must still be within the range of reasonable probability." However, "it is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." *Id*. at 266.

The Supreme Court has also cautioned against allowing jury verdicts to stand when based upon speculation. The burden of producing rationally probative evidence, and the corresponding risk of non-production, is placed upon claimants and subjected to the ultimate jury control devices of directed verdict and judgment n. o. v. *See Brady v. Southern Railway Co.*, 320 U.S. 476, 480, 64 S.Ct. 232, 234, 88 L. Ed. 239 (1943) (Trial Courts must guard against "the mischance of speculation over unfounded claims"); *Galloway v. United States*, 319 U.S. 372, 395, 63 S.Ct. 1077, 1089, 87 L.Ed. 1458 (1942) (Trial Courts must insure that "speculation be not allowed to do duty for probative facts").

ARGUMENT

## I.   THE TRIAL COURT CORRECTLY FOUND THAT BUCHANAN COUNTY FAILED TO PROVE ITS RESCISSION CLAIM

Virginia Code § 2.2-3123 provides an equitable remedy to State and Local Governmental entities in the event prohibited conduct occurs in the procurement or execution of a contract.  § 2.2-3123 narrowly outlines the contractual requirements, rights of rescission, reasonable value obligations and restitution. The clear intent of the statute is to disgorge profits made by persons who obtained written contracts with a governmental entity that were the product of bid rigging.

### A.   ABSENCE OF PROFIT EVIDENCE

§ 2.2-3123 requires a determination of three facts before a verdict could be rendered: First, what amounts were paid pursuant to contractual agreements encompassed by the statute.  Second, what is the reasonable value of the services provided.  Third, what are the amount of profits or commission earned.  Elements one and two were established, and there is no dispute as those amounts. However, Buchanan County's failure to produce evidence of profit is fatal to the successful application of Section 2.2-3123.

The District Court instructed the jury that the burden to prove the

24

reasonable value of the services provided under these contracts was with the Defendants, VLC and KJS. [J.A. @ 402. Trial Transcript: June 6, 2008 @ p. 17:1-12] The District Court did not require VLC or KJS to prove the amount of profit made, if any from these contracts. Buchanan County did not object to this language. Buchanan County incorrectly states in its Opening Brief that the District Court placed the burden of proving profits upon VLC and KJS. [Opening Brief of Appellant @ pp. 12, 18, 19, 21 & 25] It is fatal to Buchanan County's claim for rescission that it did not prove the amount of profits, if any, that were made by either VLC or KJS from the bid rigging and bribery scheme.

KJS had two debris removal contracts with Buchanan County. [J.A. @ 554. Defendants' Exhibits 5 & 6]. These contracts were obtained illegally. Assuming *arguendo* that Buchanan County followed the requirements of the rescission statute, it was entitled to lawfully rescind those contracts and recoup any profits made by KJS, using the formula outlined in the statute. It is undisputed that the value of services provided by VLC and KJS were reasonable, and that the value of those services far exceeded the amount paid by Buchanan County. VLC and KJS met their burden of proof. Reasonable value for this service would be at least $98.50 per ton of debris removed.

25

[J.A. @ 367; 565. Trial Transcript: June 5, 2008 @ p. 30:81-13; Defendants'
Exhibit #16]. KJS's contract price was significantly below that amount.
Buchanan County paid KJS $60 per ton of debris removed.

The total amount of tons removed by KJS was approximately 27,000
tons. The reasonable value for this service would have been approximately
$2.7 million, which far exceeds the amount required under the written
contract paid by Buchanan County. In order to arrive at $250,000 verdict, the
jury must have calculated the profit of KJS to be about $8 per ton. There is
no evidence to support this calculation.

With respect to VLC, Buchanan County has identical problems in
attempting to justify the $250,000 verdict. VLC removed only 5,000 tons of
debris, plus provided the use of its equipment for approximately 2 months.
Granting all possible inferences in favor of Buchanan County, in order to
justify an award of $250,000, the jury must have calculated the profit of
VLC to be at least $50 per ton of debris removed. There is no evidence to
support this calculation. This represents more than a 600% increase in profit
margin per ton, all within months of the work being done by KJS. There can
be no rational reconciliation of these verdicts.

Even if the Court accepts the argument by Buchanan County that a

26

jury would be entitled to infer that profits were realized are at least equal to the amount of the bribes, three impermissible issues arise. First, the total amount of the bribes were only $190,000. The verdict of $250,000 per defendant evidences the employment of speculation and guesswork. Second, as to the $190,000, Buchanan County failed to differentiate between the two defendants as to the amount of bribes paid by Stephens to obtain contracts for KJS and the amount of bribes paid by Stephens to aid VLC in getting paid for equipment rental and debris removal. VLC and KJS are entitled to separate considerations by the fact finder. Further, there can be no rational method to allocate the $190,000 in bribes so that Buchanan County is entitled to any money based upon rescission. Even if one arbitrarily allocates the entire $190,000 to VLC, Buchanan County can never be entitled to $250,000. Consequently, the jury could only improperly guess as to how to properly allocate the total amount of bribes paid by Stephens respective to each entity.

Third, assuming that a jury could base a verdict entirely upon the amount of bribes paid by Stephens, Buchanan County still suffers from a fatal defect in the evidence: The reasonable value of the services *[i.e.*

*approximately $2.7million]*[1] is significantly greater than the total amount paid by Buchanan County *[approximately $2.2 million]* PLUS the total amount paid in bribes *[$190,000]* by Stephens.  It is not possible to contrive a reasonable method to arrive at any verdict in favor of Buchanan County based upon the evidence introduced at trial. These illogical machinations in an attempt to explain the jury's verdicts illustrates the fact that both verdicts are the result of extreme guesswork.

In its Brief to this Court, Buchanan County incorrectly labored under the premise that the burden of proof on profits was assigned to VLC and KJS, and that the District Court required that they prove both reasonable value **and** profit or commission. The plain reading of the instructions of the District Court indicate the only burden imposed on  VLC and KJS  was to

---

[1] Based upon the agreed reasonable value of $98.50 per ton, VLC removed 5,000 tons so the reasonable value of this service is $492,500. KJS removed 27,000 tons so the reasonable value of these services is $2,659,500. The total reasonable value of services to Buchanan County for just debris removal, and not adding any value for equipment rental, supplies and the bridge construction totals almost $2.7 million.

establish the reasonable value of their services. Without question, VLC and KJS proved that the reasonable value of their services and that these services far exceeded the amount paid by Buchanan County. The failure to introduce evidence of profit or commission lies squarely with Buchanan County. The absence of evidence of profit made either by VLC or KJS left the jury only to employ guesswork and speculation in the award of damages. Even if this Court were to disagree with the District Court on this point, Buchanan County did not object to the instruction and it may not complain that it was error for the first time on appeal.

A jury may not render a verdict based upon speculation or guesswork. *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251 (1946). Damages must be "susceptible of expression in figures" and there must be a "reasonable basis of computation" so that damages are proven by facts "from which they were logically and legally inferable." *Eastman Kodak Co. v. Southern Photo Materials Co.,* 273 U.S. 359 (1927). *See also General Accident, Fire & Life Assur. Corp. v. Murry*, 120 Va. 115, 90 S.E. 620 (1916); *Turner v. Virginia Fireworks Co.*, 149 Va. 371, 141 S.E. 142 (1928) strictly prohibits judgment for damages based upon guesswork.

29

B.     ABSENCE OF ANY CONTRACT WITH VLC

Buchanan County failed to produce any evidence at trial indicative of a contractual agreement between Buchanan County and VLC.  VLC was formed by approximately 32 people in 1956, including Joe Stephens, father to Kenneth Joseph Stephens. [J.A. @ 216; 219.  Trial Transcript: June 3, 2008 @ pp. 38-21; 41:12-13].  In 1988, Joe Stephens died.  His ownership in Vansant Lumber Company passed to his wife Melba Stephens.  [J.A. @ 216. Trial Transcript: June 3, 2008 @ pp.  38:13-16].  In 1990 Melba Stephens became the registered agent of VLC. The Virginia State Corporation Commission reflects her uninterrupted status as registered agent from the period of 1990 to the present day.  By 1993 VLC was owned by Melba Stephens, Kenneth Joseph Stephens and a trust. [J.A. @ 217. Trial Transcript: June 3, 2008 @ p. 39:3].  Despite representations by counsel for Buchanan County that Stephens was the president of VLC, the evidence is lacking on this point. Statements of Counsel are not evidence. At the time of the Hurley flood, Stephens was a minority stockholder and worked as the general manager of VLC. [J.A. @ 191; 217. Trial Transcript: June 3, 2008 @ pp. 13:4; 39: 5-7].

Application of § 2.2-3123 is inappropriate to VLC. The only

reasonable interpretation of the statutory scheme requires the existence of a written contract obtained through the illegal practice of bid rigging. The record is clear that no such contract existed between VLC and Buchanan County. [J.A. @ 320. Trial Transcript: June 4, 2008 @ pp. 15:1-2; J.A. @ 232. June 3, 2008 @ 54:10-16). VLC was never involved in any bidding for debris removal contracts or allocation for contracts to build bridges.

The controlling authoritative body of the corporation never approved, ratified or even knew of the criminal actions and/or activities of Stephens. [J.A. @ 219-220. Trial Transcript: June 3, 2008 @ pp. 41: 17-25; 42:1-7]. All written contracts procured by Stephens through bid rigging and bribery were executed between Buchanan County and KJS, the company formed by Stephens in August 2002 for the specific purpose of participating in the debris work. [J.A. @ 218; 220.Trial Transcript June 3, 2008 42:14-19; 40:21-25].

C.    ABSENCE OF PROPER NOTICE OF RESCISSION TO VLC

In 2005 Buchanan County served a written Notice upon Kenneth Joseph Stephens. The content of that Notice stated "your contracts for flood debris relief--for flood relief work are rescinded" [J.A. @ 208-209. Trial Transcript: June 4, 2008 30:24-25; 31:1-2]. The notice incorrectly identified

31

Kenneth Joseph Stephens as the owner of VLC. [J.A. @ 209. Trial Transcript: June 4, 2008 @ pp. 31:9-12].

Buchanan County presented no evidence that indicated that Buchanan County complied with the statutory obligation to provide the notice of rescission to the controlling members of VLC, or its registered agent.

Virginia Code §13.1-637 provides that "a corporation's registered agent is the corporation's agent for service of process, notice, or demand required or permitted by law to be served on the corporation." Thus, the notice of rescission of any alleged contract with VLC is fatally defective.

As argued by Buchanan County, Virginia Code §2.2-3123 must be strictly construed and not to be enlarged in their operation by construction beyond their express terms. *Alleghany County v. Parrish*, 93 Va. 615, 25 S.E. 882, 884 (Va. 1896); *Jan Paul Fruiterman, M.D. and Associates, P.C. v. Waziri*, 259 Va. 540, 525 S.E.2d 552 (2000); S*ee also Isbell v. Commercial Inv. Associates, Inc.*, 273 Va. 605, 644 S.E.2d 72 (2007). Plain reading of Section 2.2-3123 indicates a statue created in derogation of common law. As suggested by Buchanan County the terms of the statute must be strictly construed.   Consequently, Buchanan County's failure to provide proper notice to Vansant Lumber Company with regards to any alleged contractual

rescission is fatal to their claim for relief under 2.2-3123.  Moreover, as Buchanan County elected not to plead a common law claim, the only possible avenue of relief is through the statute.

## D.    PRECLUSION OF THE STATUTORY EQUITABLE REMEDY

The relief afforded by §2.2-3123 is equitable in nature.  The principles and maxims that apply in equity suits include the "clean hands doctrine," , "he who seeks equity must do equity", and "equity looks to substance of things and not to mere form." *Westbrook v. Westbrook*, 5 Va. App. 446, 364 S.E.2d 523 (1988). Equity does not look solely at rights of one party and ignore those of the other. *Virginia Public Service Co. v. Steindler*,166 Va. 686, 187 S.E. 353 (1936).

It is most relevant for the Court to consider the conduct of a Plaintiff when rescission is sought. Any party invoking the aid of equity to rescind a contract must establish that their conduct was honorable and fair. *Bolling v. King Coal Theaters*, 185, Va. 991, 41 S.E.2d 59 (1947).  Parties knowingly joining in contract, which is illegal as involving immoral purpose or one for which punishment is provided, are *in pari delicto*, and court will not relieve either from consequences of their acts, but will leave them where it finds them. *American-LaFrance & Foamite Industries v. Arlington County,* 169

33

Va. 1, 192 S.E. 758 (1937). The equitable defense of *in pari delicto* is rooted in the common law notion that a plaintiff's recovery may be barred by his own wrongful conduct. *See Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306, 105 S.Ct. 2622, 86 L.Ed.2d 215 (1985). The Supreme Court has held that the defense of *in pari delicto* is available where: (1) "as a direct result of his own actions, the plaintiff bears at least substantially equal responsibility for the violations he seeks to redress; and (2) preclusion of suit would not significantly interfere with the effective enforcement of [federal law]." *Id*. at 310-11, 105 S.Ct. 2622. "The first prong of this test captures the essential elements of the classic *in pari delicto* doctrine. The second prong, which embodies the doctrine's traditional requirement that public policy implications be carefully considered before the defense is allowed, ensures that the broad judge-made law does not undermine the congressional policy favoring private suits as an important mode of enforcing federal [statutes]." *Pinter v. Dahl*, 486 U.S. 622, 632, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988).

The Jury conclusively established that (1) Buchanan County was at least as equal in culpability as VLC and KJS and (2) Buchanan County was an active, voluntary participant in the illegal activity from which they now

34

seek recovery. Multiple members of the Buchanan County Board of Supervisors, namely, Pete Stiltner, Ray Blankenship, Kenneth Wolford and Terry Keene admitted to being involved in the bribery and bid rigging scheme, as well as the active knowledge and participation by its current county administrator William Caudill. Further evidence of Buchanan County's wrongdoing include the results of the FEMA investigation that barred Buchanan County of funding solely based on the activities of Buchanan County officials.

Buchanan County continues to act in opposition to the principles of equity. Following the criminal prosecution and conviction of Stephens Governmental Attorneys and Governmental law enforcement agents of the IRS investigated all the financial records of VLC and KJS. Based on the results of the investigation, an amount of $700,000 was determined to reflect any reasonably attributable profits that KLS and VLC realized as a result Stephens' participating in the bribery/bid rigging. Following remission of the $700,000, Buchanan County filed a Petition with the United States to receive this money, and incident to that Petition for Remission of Funds, the United States Government dispersed the entirety of the amount to Buchanan County. Thereafter, despite receipt of the $700,000 and the receipt of money

35

from other persons connected to the bid rigging, and after receiving payment by FEMA in the approximate amount of $5.9 million, Buchanan County instituted a claim for rescission under the Virginia statute that essentially attempts to disgorge the same amount of profits already received by Buchanan County.

In response to the argument advanced by VLC and KJS that Buchanan County has already received the disgorgement of profits and should not be allowed to collect twice, Buchanan County suggests that these funds were paid by Stephens individually and the collateral source rule prohibits any credit in favor of VLC and KJS. In so doing, Buchanan County conveniently changes its position on the relationship of Stephens to VLC and KJS. Throughout the duration of the trial, i.e on liability issues, Buchanan County aggressively argued that Stephens acted on behalf of VLC and KJS. The Jury agreed with this argument as evidenced by their verdict. However, now armed with a verdict that evidences the very proposition that Buchanan County advanced at trial, Buchanan County must assert a position directly opposite when attempting to escape the fact that it has already been compensated by Stephens. A fair conclusion would be that Buchanan County is continuing to engage in the same type of extortion that followed the 2002

flood.

Buchanan County officials solicited and received $190,000 in bribes from Kenneth Joseph Stephens. Buchanan County paid VLC approximately $340,000 for work performed at the flood sites and approximately $1.9 million to KJS for debris removal. Buchanan County saved over $1 million dollars in cleanup and repair costs based on the figures submitted by the contractors originally identified by FEMA for the same amount of work based upon the undisputed reasonable value of the debris removal cost of $98.50 per ton.

The maxim "he who seeks equity must do equity" means that he who seeks the aid of equitable remedy subjects himself to the imposition of such terms as the settled principles of equity require, and equitable relief will not be granted unless the party seeking such relief has acknowledged and conceded, or will admit and provide for, all the equitable rights, claims and demands justly belonging to adversary party and growing out of or necessarily involved in the subject matter of the controversy. *Lindsey v. Clark*, 193 Va. 522, 69 S.E.2d 342 (1952). The actions and activities of Buchanan County plainly conflict with the doctrines associated with equitable relief.

37

## II.    VLC AND KJS ARE ENTITLED TO SET OFF

Assuming *arguendo* that the Court finds Buchanan County is entitled to the jury award, Buchanan County will be unjustly enriched. The jury has already found that Buchanan County suffered no injury. The evidence suggests that the "only thing that's been injured is the corrupt organization's ability to demand bribes from people" [J.A. @ 280. Transcript: June 3, 2008 @ pp. 124: 5-13].

The District Court was extremely skeptical of the claims by Buchanan County and this skepticism is captured in a brief exchange with the District Court and Counsel for Buchanan County:

The Court:          It does sort of stick in my craw a little bit for the county

                    to have all of that money plus additional money…

 [J.A. @ 583. Trial Transcript: September 2, 2008 @ p. 18].

Any possible profits by VLC or KJS have been disgorged and delivered to Buchanan County by Stephens. Buchanan County continues to inequitably pursue money from persons and entities that have already given much. To allow the verdict to be upheld would only embolden an entity that is admittedly a corrupt organization.

VLC and KJS rely upon the facts and argument made supra with

respect to the payment of $700,000 by Stephens.

## CONCLUSION

Wherefore, VLC and KJS submit that the District Court's decision to should be affirmed for the reasons expressed by the District Court, and for all of the additional reasons advanced by VLC and KJS herein.

Respectfully submitted,

VANSANT LUMBER COMPANY and

KJ STEPHENS AND ASSOCIATES, LLC

BY COUNSEL

s/ TIMOTHY W. McAFEE

Timothy W. McAfee

Virginia State Bar Number: 21779

Attorney for APPELLEES

Timothy W. McAfee, P.L.L.C

P.O. Box 529

1033 Virginia Avenue, NW

Norton, VA 24273

Telephone: (276) 679-5401

Fax: (276) 679-5403

E-mail:  tmcafee@mcafeelaw.com

## REQUEST FOR ORAL ARGUMENT

Counsel for the Appellees submit that oral argument is not necessary to a fair adjudication of the issues.

CERTIFICATE OF COMPLIANCE UNDER FRAP 32

**Record No. 08-2243**

BUCHANAN COUNTY VIRGINIA

vs.

VANSANT LUMBER COMPANY ET AL APPELLANT

1.  EXCLUSIVE of the corporate disclosure statement; table of contents; table of citations; statement with respect to oral argument; any addendum containing statutes, rules, or regulations; and the certificate of service, I certify that this brief complies with the type volume limitation of Fed. R. App. P. 32(a)(7)(B) because the Brief contains **7,599** words.

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportional typeface using Microsoft Word in 14 point Times News Roman.

3.  I understand that a material misrepresentation may result in the Court's striking the brief and imposing sanctions. If the Court so requests, I will provide an electronic version of the brief.

s/ Timothy W. McAfee
Counsel for Appellees
Dated:        June 8, 2011

41

CERTIFICATE OF SERVICE AND FILING

I hereby certify that on **June 8, 2011**, I filed the foregoing Response Brief of Appellees with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> STEVEN R. MINOR
> ROBERT L. HOBBS
> ELLIOT, LAWSON & MINOR
> 110 PIEDMONT AVE
> SUITE 300
> BRISTOL, VA 24201
> COUNSEL FOR THE APELLANT

s/ TIMOTHY W. McAFEE

Timothy W. McAfee

Virginia State Bar Number: 21779

Attorney for APPELLEES

Timothy W. McAfee, P.L.L.C

P.O. Box 529

1033 Virginia Avenue, NW

Norton, VA 24273

Telephone: (276) 679-5401

Fax: (276) 679-5403

E-mail:  tmcafee@mcafeelaw.com

42